**Melanie McCANN, Noele Nelson, Lisa Nielson, Plaintiffs—Appellants,**

**v.**

**Bryon L. ROSQUIST, D.C., P.C., a Utah corporation; Bryon L. Rosquist, individually, Defendants—Appellees.**

No. 98–4049.

United States Court of Appeals, Tenth Circuit.

Aug. 3, 1999.

Larry S. Jenkins (Mary Anne Q. Wood, with him on the briefs), Wood Crapo LLC, Salt Lake City, Utah, for the Plaintiffs—Appellants.

Brent O. Hatch, Johnson & Hatch, P.C., Salt Lake City, Utah, for the Defendants—Appellees.

Before PORFILIO, LUCERO and COOK*, Circuit Judges.

LUCERO, Circuit Judge.

This case requires us to determine whether the Utah criminal offense of forcible sexual abuse, Utah Code Ann. § 76–5–404, constitutes a "crime of violence" within the meaning of 18 U.S.C. § 16. Because we conclude that the offense of forcible sexual abuse prohibited in the Utah statute implicates a significant risk of application of physical force, we reverse the district court's dismissal of plaintiffs' complaint for failure to state a cause of action under the Gender Motivated Violence Act (GMVA), the civil liability provision of the Violence Against Women Act (VAWA), 42 U.S.C. § 13981.

## I

This appeal arises out of a civil action by plaintiffs-appellants Melanie McCann, Noele Nelson, and Lisa Nielson, against

---

* The Honorable H. Dale Cook, United States Senior District Judge for the Northern District of Oklahoma, sitting by designation.

their former employer, chiropractor Bryon Rosquist. In their complaint, plaintiffs allege that during the course of their employment, Rosquist repeatedly fondled and rubbed their buttocks, breasts, and genital areas clothed and unclothed, without their consent and with the intent to gratify his sexual desire. The conduct occurred in the course of chiropractic examinations and ostensible adjustments that Rosquist allegedly required only of his female employees as a condition of their employment, as well as in other situations both in Rosquist's place of business and at workplace social events. In July 1997, after all plaintiffs had left or been terminated from Rosquist's employ, they filed suit in federal district court, alleging violation of the GMVA as well as state law claims for intentional infliction of emotional distress, assault, battery, invasion of privacy, breach of contract, breach of the covenant of good faith and fair dealing, wrongful termination in violation of public policy, and constructive termination.

Rosquist moved, pursuant to Fed. R.Civ.P. 12(b)(6), to dismiss plaintiffs' actions for failure to state a federal claim under the VAWA and for the ensuing lack of supplemental federal jurisdiction over state law claims. The district court dismissed plaintiffs' suit, reasoning that although they had met the first element of the GMVA by alleging a felony against the person under Utah law, the felony alleged, forcible sexual abuse, is not a "crime of violence" under 18 U.S.C. § 16. *See McCann v. Bryon Rosquist*, D.C., P.C., 998 F.Supp. 1246, 1248, 1252 (D.Utah 1998). The district court concluded that "[w]hile the conduct alleged is offensive and repulsive, and according to U.C.A. § 76–5–404, a felony, it is not of the violent nature required to state a cause of action

under GMVA." *Id.* at 1252. Plaintiffs now appeal. We have jurisdiction pursuant to 28 U.S.C. § 1291, and reverse.

## II

The GMVA provides for a civil cause of action against any person "who commits a crime of violence motivated by gender." 42 U.S.C. § 13981(c). "Crime of violence" is defined in relevant part as "an act or series of acts that would constitute a felony against the person ... and that would come within the meaning of State or Federal offenses described in section 16 of Title 18." 42 U.S.C. § 13981(d)(2)(A).

Plaintiffs' complaint alleges a state law felony against the person, namely forcible sexual abuse, Utah Code Ann. § 76–5–404.[1] *Cf. Doe v. Hartz*, 134 F.3d 1339, 1343 (8th Cir.1998) (dismissing suit under the GMVA for failure to allege a predicate felony under state or federal law). In addition, it is undisputed that Rosquist's alleged actions were motivated by gender. *See McCann*, 998 F.Supp. at 1252–53 (rejecting argument, apparently abandoned on appeal, that Rosquist's action was not motivated by gender because the alleged conduct was " 'amorous' as opposed to being based on 'animus' "). The dispositive question before us is whether the acts alleged come within the meaning of 18 U.S.C. § 16.

Section 16(a) defines a crime of violence as "an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another." Utah Code Ann. § 76–5–404 does not have such an element. *See State v. Kennedy*, 616 P.2d 594, 597–98 (Utah 1980) (stating, in discussion of analogous earlier version of forcible sexual abuse statute, that "[t]he law is clear in

---

1. Utah Code Ann. § 76–5–404(1) provides that

   [a] person commits forcible sexual abuse if the victim is 14 years of age or older and, under circumstances not amounting to rape, object rape, sodomy, or attempted rape or sodomy, the actor touches the anus, buttocks, or any part of the genitals of another, or touches the breast of a female, or

otherwise takes indecent liberties with another, or causes another to take indecent liberties with the actor or another, with intent to cause substantial emotional or bodily pain to any person or with the intent to arouse or gratify the sexual desire of any person, without the consent of the other, regardless of the sex of the participant.

this state that outright violence is not a necessary element of a crime requiring lack of consent"). Plaintiffs maintain, rather, that 18 U.S.C. § 16(b), defining "crime of violence" as "any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense," includes the offense at issue in the instant action, and thus they state a claim under the GMVA.

## III

Our disposition of the case hinges upon our determination of whether the Utah offense of forcible sexual abuse fits within the definition of an offense "that, by its nature, involves a substantial risk that physical force against the person or property of another may be used." 18 U.S.C. § 16(b). Our initial step in that determination is to ascertain the appropriate level of generality at which we assess "substantial risk." Specifically, we must determine whether we consider, for purposes of assessing substantial risk under § 16(b), only the offense as defined by state law, or whether we can take into account the particular conduct alleged.

### A

We conclude that the language of 18 U.S.C. § 16 and our precedents require that the crime of violence analysis be conducted at the level of the statutory definition. *See United States v. Reyes–Castro*, 13 F.3d 377, 379 (10th Cir.1993) (holding that "a court must only look to the statutory definition, not the underlying circumstances of the crime" to determine whether a given offense is "by its nature a crime of violence" for purposes of 18 U.S.C. § 16) (citing *United States v. Rodriguez*,

979 F.2d 138, 141 (8th Cir.1992)). Applying what has been termed a "categorical approach" to defining offenses for crime of violence determinations, we concluded in *Reyes–Castro* that attempted sexual abuse of a child, in violation of Utah Code Ann. § 76–5–404.1(1), "by its nature" involves a "substantial risk" of physical force. *Reyes–Castro*, 13 F.3d at 379. Notably, the elements of that statute, Utah Code Ann. § 76–5–404.1(1), are essentially identical to the elements of forcible sexual abuse, Utah Code Ann. § 76–5–404, differing only with respect to the age of the victim and the absence of an explicit lack-of-consent element, not to the behavior criminalized.[2]

The district court in this case, however, declined to apply the approach of *Reyes–Castro* to determine whether the Utah offense is, by its nature, a crime of violence under § 16. The court relied instead on *Taylor v. United States*, 495 U.S. 575, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990), to find that forcible sexual abuse is an offense that falls within the so-called *"Taylor* exception." *See McCann*, 998 F.Supp. at 1250–51. Citing this exception, the district court based its analysis on the particular circumstances of the alleged acts in this case. *See id.* at 1252.

In *Taylor*, the Supreme Court considered whether a conviction under the Missouri burglary statute constituted "burglary" for purposes of the sentence enhancement for violent felonies, specifically including burglary, imposed by 18 U.S.C. § 924(e). The Court rejected the notion that "burglary" under 18 U.S.C. § 924(e)(2)(B)(ii) refers to any offense labeled "burglary" by the relevant State, and concluded instead that Congress intended to establish, for purposes of

---

**2.** Utah Code Ann. § 76–5–404.1(1) provides that

A person commits sexual abuse of a child if, under circumstances not amounting to rape of a child, object rape of a child, sodomy upon a child, or an attempt to commit any of these offenses, the actor touches the anus, buttocks, or genitalia of any child, the breast of a female child younger than 14 years of age, or otherwise takes indecent liberties with a child, or causes a child to take indecent liberties with the actor or another with intent to cause substantial emotional or bodily pain to any person or with the intent to arouse or gratify the sexual desire of any person regardless of the sex of any participant.

§ 924(e)(2)(B)(ii), a uniform federal definition of burglary as a violent felony. *See Taylor,* 495 U.S. at 590, 110 S.Ct. 2143. Under this approach, the Court adopted a "generic" definition of burglary as unlawful entry into a building or structure for purposes of the violent felony sentence enhancement, and considered whether the defendant's conviction, under a burglary statute that did not utilize this "generic" definition, constituted a conviction for "burglary" within the meaning of § 924(e)(2)(B)(ii). *Id.* at 598–99, 110 S.Ct. 2143.

The Court in *Taylor* laid out a "categorical approach" for determining whether a state burglary statute satisfies the elements of federally-defined "generic burglary" for purposes of 18 U.S.C. § 924(e). *Id.* at 600, 110 S.Ct. 2143. Although normally this approach looks "only to the statutory definitions of the prior offenses, and not to the particular facts" underlying the convictions at issue, *id.,* nevertheless, the Court stated, "[t]his categorical approach ... may permit the sentencing court to go beyond the mere fact of conviction in a narrow range of cases where a jury was actually required to find all the elements of generic burglary." *Id.* at 602, 110 S.Ct. 2143. The district court concluded that such an exception applied here, and thus went on to conclude that Rosquist's particular acts, in context, did not involve a substantial risk of physical force:

> The actions alleged do not constitute an offense that by its nature involved a substantial risk of the type of physical force required to state a cause of action under GMVA. Likewise, the time, place, manner, and other circumstances alleged are not such that the situation could escalate into one where there would be a substantial risk that physical

force would be used. All of the acts alleged appear to have occurred at work or at social activities under circumstances that would have greatly discouraged any escalation of contact to the type of violent conduct required within the meaning of section 16(b) and GMVA. *McCann,* 998 F.Supp. at 1252.

The *"Taylor* exception," however, is far narrower than the district court assumed, and does not envision the type of case-by-case inquiry that the district court applied. In *United States v. Permenter,* 969 F.2d 911, 913–14 (10th Cir.1992), we rejected the contention that the *Taylor* exception should extend beyond enumerated offenses to the "otherwise" clause of 18 U.S.C. § 924(e)(2)(B)(ii), which provides for defining an offense as a qualifying crime of violence in general terms—as does U.S.C. § 16.[3] The *"Taylor* exception" is therefore restricted to cases in which a court looks beyond the simple fact of a conviction to determine whether the offense meets the elements of certain specific offenses enumerated in § 924(e)(2)(B)(ii). *See Permenter,* 969 F.2d at 913. The exception does not apply to the "otherwise" clause of § 924(e)(2)(B)(ii), which defines "violent felony" as a felony that "otherwise involves conduct that presents a serious potential risk of physical injury to another." Likewise, it does not apply by analogy to 18 U.S.C. § 16, the statutory provision defining crimes of violence. Rather, § 16 is closely analogous to the "otherwise" clause of § 924(e)(2)(B)(ii), which defines a violent felony in general terms. Therefore, *Permenter* prohibits application of the *"Taylor* exception," or any equivalent exception to the categorical approach, when examining an offense to determine whether it qualifies as a "crime of violence" under 18 U.S.C. § 16.[4]

---

**3.** 18 U.S.C. § 924(e)(2)(B) defines the term "violent felony," in relevant part, as a crime punishable by imprisonment for more than one year that:

    (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

**4.** Moreover, even when applicable, the *Taylor* exception does not permit a subjective injury as to whether particular factual circumstances involve a risk of violence. *See Taylor,* 495 U.S. at 601, 110 S.Ct. 2143 (warning of "the practical difficulties and potential unfairness of a factual approach"). Rather, when applicable, it allows a court to look beyond

## B

Section 16 also differs from the particular burglary provision of § 924(e) at issue in *Taylor*, in that our analysis under § 16 focuses on the terms of the particular state or federal statute at issue, rather than on constructing a generic federal definition for every conceivable offense. *See Reyes–Castro*, 13 F.3d at 379 (citing *Taylor* and referring to its categorical approach as analogous supporting authority, rather than as directly controlling authority, for the approach to crime of violence analysis under § 16). The *Taylor* Court concluded that, in enumerating the specific offense of burglary in § 924(e)(2)(B)(ii), Congress intended to apply a uniform federal definition of burglary. *See Taylor*, 495 U.S. at 592, 110 S.Ct. 2143. Section 16, by contrast, does not refer to specific offenses, but rather provides a general definition for the category of crimes of violence. In addition, Congress has applied the § 16 definition, in a variety of contexts, to various state and federal offenses. *See, e.g.*, 8 U.S.C. § 1101(a)(43) (defining aggravated felony, for immigration purposes, by reference to 18 U.S.C. § 16); 8 U.S.C. § 1227(a)(2)(E)(i) (defining domestic violence offenses, for deportation purposes, by reference to 18 U.S.C. § 16); 42 U.S.C. § 13891(d)(2)(A) (defining predicate offenses, for purposes of GMVA liability, by reference to 18 U.S.C. § 16).

Thus, § 16 does not demonstrate Congressional intent to require comparison with a particular uniform federally-defined offense, such as burglary. The Court's conclusion in *Taylor* that "Congress meant by 'burglary' the generic sense in which the term is now used in the criminal codes of most States," 495 U.S. at 598, 110 S.Ct. 2143, does not extend to the broader proposition that Congress intended uniform federal definitions for all offenses—none specifically enumerated—in conducting crime of violence analyses under 18 U.S.C. § 16. To import such a requirement would impose on federal courts the overwhelming and ultimately pointless task of creating generic federal definitions for all crimes, even those lacking any clear common-law origin or general consensus on their elements. *Cf. Taylor*, 495 U.S. at 592–94, 110 S.Ct. 2143 (discussing common-law origin and shared core definition of burglary). Therefore, under *Reyes–Castro*, we focus only on the elements of a particular state statute in applying § 16, and do not attempt to construct a uniform federal definition for the offense at issue. *See Reyes–Castro*, 13 F.3d at 379.

## C

▆ Having determined our approach to § 16(b) and the GMVA, the question before us is whether forcible sexual abuse, as defined under Utah law, carries a similarly substantial risk of physical force as does attempted sexual abuse of a child, the crime of violence at issue in *Reyes–Castro*.[5] Forcible sexual abuse, as defined in Utah Code Ann. § 76–5–404 as intentional sexual touching of another with a particular mental state and without consent, represents a particular subset of assault and battery.[6] *See State v. Jones*, 878 P.2d

---

the fact of conviction to determine whether the "definition [of a particular enumerated crime] is met by a specific conviction." *Permenter*, 969 F.2d at 914.

**5.** We look to the elements of the statute, not just the fact that it is labeled "forcible," in conducting our analysis under 18 U.S.C. § 16(b). *See Reyes–Castro*, 13 F.3d at 379 (examining elements of statutory definition of crime).

**6.** Although the Utah statute also provides that a person commits forcible sexual abuse if that person "otherwise takes indecent liberties with another, or causes another to take indecent liberties with the actor or another," Utah courts have read this language narrowly, holding that "indecent liberties" refers only to "acts of equal magnitude of gravity" to those specifically set forth in the statute. *Kennedy*, 616 P.2d at 597; *see also State in the Interest of J.L.S.*, 610 P.2d 1294, 1296 (Utah 1980) (reading the term "indecent liberties" as not "subsuming a mere offensive touching when the circumstances do not indicate conduct of sufficient gravity to be equated with the specific descriptions [of offensive touching] set forth in the statute.")

1175, 1177 (Utah Ct.App.1994) (concluding that assault, "an act committed with unlawful force or violence, that causes or creates a substantial risk of bodily injury to another," Utah Code Ann. § 76-5-102, may be a lesser included offense of forcible sexual abuse); *cf. Palazzolo v. Ruggiano,* 993 F.Supp. 45, 47-49 (D.R.I.1998) (dismissing, for failure to state a predicate crime of violence for purposes of the GMVA, a suit alleging violation of R.I. Gen. Laws § 11-37-4(3), a statutory provision that does not require as an element either use of force or lack of consent).

In *Reyes-Castro,* analyzing the analogous statutory counterpart—covering sexual abuse of a child—to the statute before us—covering sexual abuse of an adult—we focused on the nonconsensual character of the offense of sexual abuse of a child. *See Reyes-Castro,* 13 F.3d at 379. Noting that rape is a violent crime, *see id.* (citing *State v. Cude,* 784 P.2d 1197, 1203 n. 27 (Utah 1989)), we addressed the relationship between lack of consent, an element of the crime of rape, and the risk of physical force, and stated that

> [b]ecause the crime [of rape] involves a non-consensual act upon another person, there is a substantial risk that physical force may be used in the course of committing the offense. It does not matter

whether physical force is actually used. "Our scrutiny ends on a finding that the risk of violence is present."

*Reyes-Castro,* 13 F.3d at 379 (quoting *Rodriguez,* 979 F.2d at 141). We therefore concluded, in light of both the terms of Utah child sexual abuse statute and "the legal determination that children are incapable of consent," there will always be "a substantial risk that physical force will be used to ensure the child's compliance." *Id.* We held that attempted sexual abuse of a child is a crime of violence under 18 U.S.C. § 16(b). *See id.*[7]

In *Reyes-Castro,* reference to the principle that a child is legally incapable of consent was persuasive but not dispositive.[8] More significantly, the statute now before us explicitly requires that the prohibited conduct be committed "without the consent of the other." Utah Code Ann. § 76-5-404. Therefore, the legal ability of adults to consent is irrelevant, as consent would remove conduct from the ambit of the statute. Although children's lesser physical stature and general vulnerability to violence and sexual exploitation by adults may increase the risk that physical force be exerted to ensure compliance in situations of child sexual abuse, this presumption by no means forecloses the potential that the risk of such force against adults is nevertheless substantial within the meaning of 18 U.S.C. § 16.[9] In

---

7. If attempted sexual abuse of a child is a crime of violence, a fortiori, the completed offense of sexual abuse of a child is a crime of violence. *Cf. United States v. Coronado-Cervantes,* 154 F.3d 1242, 1244-45 (10th Cir. 1998) (holding that sexual abuse of a minor is a violent crime within the meaning of the Sentencing Guidelines, and, noting that definitions of "crime of violence" in 18 U.S.C. § 16 and U.S.S.G. § 4B1.2 differ slightly, finding *Reyes-Castro* to be persuasive in its § 4B1.2 analysis); *United States v. Passi,* 62 F.3d 1278, 1282 (10th Cir.1995), (following *Reyes-Castro* in characterizing sexual abuse of a minor as a violent crime under U.S.S.G. § 2A3.1).

8. Indeed, the analogy between the lack of consent element of § 76-5-404 and the legal impossibility of consent implicated by § 76-5-404.1(1) renders the two statutes even less distinguishable and the *Reyes-Castro* analysis even more directly on point.

9. Rosquist suggests that to extend our reasoning in *Reyes-Castro* regarding sexual violence against children to sexual violence against women would be to engage in impermissible sex stereotyping. This argument ignores the fact that both the GMVA and the Utah forcible sexual abuse statute apply, respectively, to gender-motivated violence and sexual abuse against men as well. More to the point, it is a bizarre view of equality indeed to suggest that some abstract principle of sex equality requires legislatures and courts to ignore the degree to which sexual violence is overwhelmingly and specifically directed against women. *See, e.g.,* Patricia Tjaden & Nancy Thoennes, *Prevalence, Incidence, and Consequences of Violence Against Women: Findings From the National Violence Against Women Survey* 3, 12 (1998) (noting statistical predominance of partner violence and rape against women); Catharine A. MacKinnon, *Reflections on Sex Equality Under Law,* 100 Yale L.J. 1281, 1303-06 (1991) (discussing uneasy

*Reyes–Castro*, we focused on the relationship between lack of consent and the substantial risk of the application of physical force. We conclude today that such relationship is significant regardless of the age of the victim. *Cf. United States v. Phelps*, 17 F.3d 1334, 1342 (10th Cir.1994) (concluding that kidnapping is a violent felony under 18 U.S.C. § 924(e)(2)(B)(ii), and emphasizing relationship between lack of consent and risk of physical injury).

Moreover, we note that the risk of physical force in a completed act or completed acts of forcible sexual abuse is arguably even greater than the risk at issue in *Reyes–Castro*, which involved attempted sexual abuse. *See Reyes–Castro*, 13 F.3d at 378.

■ We further reject the district court's assumption that either § 16 or the GMVA is restricted to a certain "type" of physical force. *See McCann*, 998 F.Supp. at 1252 ("The actions alleged do not constitute an offense that by its nature involved a substantial risk of the type of physical force required to state a cause of action under GMVA."). Section 16 refers only to "physical force"; it does not qualify that reference by requiring physical force of a particular nature or severity. In fact, the imposition of nonconsensual sexual contact, whether brought about by brute force or, as alleged here, by trick and abuse of authority, might itself be considered a form of violence, capable of causing mental and emotional injury no less severe than the physical injury caused by a blow. *See Passi*, 62 F.3d at 1282 (noting, in holding that sexual abuse is a crime of violence under the Sentencing Guidelines, district court's statement that "psychological brutalization is inherent in an offense like this and incest and rape are in the same category as both being crimes of violence inherently whether or not raw force is used"). Even if one were to reject such a theory, however, and conclude that "violence" requires some greater degree of physical coercion or injury, the risk thereof certainly exists. The very

act of nonconsensual sexual contact, which by its nature evinces a clear intention to disregard the victim's dignity and bodily autonomy, both demonstrates and creates a substantial risk of more serious physical intrusion or the application of force to ensure compliance.

Nor are we persuaded that Congress somehow imposed a more restrictive construction on the terms of 18 U.S.C. § 16 solely for purposes of the VAWA. The crimes of violence contemplated by the GMVA are more than merely murder, rape, and other extreme acts causing grave injury or death, but instead include, by incorporating the definition in 18 U.S.C. § 16, a variety of crimes both inherently forceful and implicating a significant risk of force. As the legislative history of the VAWA noted, the conduct covered by the GMVA includes "crimes of violence, including felony rape, sexual assault, kidnaping, *and any other felonies against the person* . . . committed because of or on the basis of gender, and motivated, at least in part, by animus toward the victim's gender." S.Rep. No. 103–138, at 64 (1993) (emphasis added). In enacting the VAWA, Congress recognized the degree to which our nation's systems of law enforcement and adjudication have been complicit in perpetuating the epidemic of violence against women, in part by failing to recognize crimes of gender-motivated violence as serious crimes. *See id.* at 49 ("Study after study have proved that crimes disproportionately affecting women are often treated less seriously than crimes affecting men."). We will not compound that failing today by restricting, in contravention of the language of 18 U.S.C. § 16, the definition of "violence" to only those forms of violence most traditionally feared by men—murder and serious bodily injury. To adopt such a restriction would be to exclude much of the "widespread incidence of physical assault against women" from the coverage of the VAWA. Tjaden & Tho-

relationship of sex equality doctrine to the

reality of sexual assault against women).

ennes, *Prevalence, Incidence, and Consequences of Violence Against Women* at 12.

The civil remedy provision of the VAWA represents, in part, Congress's effort to remedy the ever-present threat of sexual assault and the continuing failure of our legal institutions to respond to that threat. In light of that effort, the plain language of 18 U.S.C. § 16, and the precedential authority of *Reyes–Castro,* we conclude that nonconsensual physical sexual abuse implicates substantial risk of physical force, even when unaccompanied by rape, bodily injury, or extreme forms of coercion. To do otherwise would be to perpetrate, deliberately and in contravention of established precedent, the very judicial indifference to gender-based violence that Congress has endeavored to obviate.

## IV

■ We recognize that there has been considerable litigation over whether the civil remedy provision of the VAWA is a legitimate exercise of Congressional power under either the Commerce Clause of Article I or Section 5 of the Fourteenth Amendment. *Compare, e.g., Brzonkala v. Virginia Polytechnic Institute and State University,* 169 F.3d 820, 889 (4th Cir. 1999) (en banc), *petitions for cert. filed,* (U.S. June 25, 1999) (No. 99–5), (U.S. June 30, 1999) (No. 99–29) (holding that enactment of § 13981 exceeded Congressional authority under either the Commerce Clause or Section 5 of the Fourteenth Amendment) *with Ericson v. Syracuse University,* 45 F.Supp.2d 344, 348 (S.D.N.Y.1999) (holding § 13981 constitutional under the Commerce Clause).

Rosquist did not raise the constitutional issue below, however, and the district court did not rule on it. *See Rosquist,* 998

F.Supp. at 1247. "It is the general rule, of course, that a federal appellate court does not consider an issue not passed on below." *Singleton v. Wulff,* 428 U.S. 106, 120, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976). Although we may resolve issues for the first time on appeal if the facts of the individual case so warrant, *see id.* at 121, 96 S.Ct. 2868, we do so "only in the most unusual circumstances." *Lyons v. Jefferson Bank & Trust,* 994 F.2d 716, 721 (10th Cir.1993). We have, for example, considered an issue of law where the district court implicitly addressed it, *see Trierweiler v. Croxton and Trench Holding Corp.,* 90 F.3d 1523, 1538 (10th Cir.1996), and where the proper resolution of the issue was beyond a reasonable doubt and failure to reach it would cause injustice, *see Petrini v. Howard,* 918 F.2d 1482, 1483 n. 4 (10th Cir.1990).

■ In this case, on the other hand, the district court explicitly refused to consider the issue, the issue itself is contentious, *see, e.g., Brzonkala,* 169 F.3d at 905 (Motz, J., dissenting), and neither the government nor appellants have been afforded an opportunity to develop arguments and present evidence in defense of the statute's constitutionality,[10] *see Singleton,* 428 U.S. at 120, 96 S.Ct. 2868 (chiding court of appeals for reaching merits of constitutional issue where one party had never been heard on that issue). We therefore refuse to consider the constitutionality of the GMVA at this time.[11]

■ Nor are we persuaded that the possibility of constitutional challenges to the GMVA requires a narrow interpretation of the term "crime of violence" in 18 U.S.C. § 16, under the rule of statutory construction requiring that we construe a statute "to avoid difficult constitutional is-

10. *See* Fed. R.App. P. 44 (requiring party challenging constitutionality of a federal statute, in an action in which the United States is not a party, to give written notice to the circuit clerk of the constitutional challenge in order to provide notice to the government). Our review of the docket in this case yields no indication that Rosquist has filed such Rule 44 notice.

11. Rosquist's suggestion that the constitutionality of the GMVA is jurisdictional and therefore a predicate issue is without merit. The provisions of the VAWA are presumed constitutional until invalidated, and therefore if plaintiffs' complaint states a claim under the GMVA, it clearly invokes federal question jurisdiction.

**1122**

sues" in the absence of clear legislative intent. *Turner v. United States Parole Comm'n,* 934 F.2d 254, 257 (10th Cir.1991). Section 16 exists independently of the VAWA, and we cannot disregard Congress's clear legislative intent to incorporate its definition of crimes of violence into the GMVA. It is simply not permissible for us to create, contrary to clear legislative intent, a special narrower construction of 18 U.S.C. § 16 for purposes only of the GMVA, in an effort to avoid a hypothetical constitutional challenge. Moreover, the relationship between the GMVA's incorporation of the definition of crimes of violence and Congress's authority to enact the GMVA under the Commerce Clause and the Fourteenth Amendment is exceptionally attenuated. Thus we are neither persuaded that constitutional concerns require insertion of a narrowing construction into the GMVA's incorporation of 18 U.S.C. § 16, nor that such concerns are sufficiently intertwined with the issue of the construction of the GMVA and § 16 to require resolution today.

### V

We conclude that the offense of nonconsensual sexual abuse of an adult necessarily implicates a significant risk of physical force being used to ensure compliance with the perpetrator's desires. Therefore, Utah Code Ann. § 76–5–404 is indistinguishable, for purposes of a "crime of violence" analysis under 18 U.S.C. § 16, from Utah Code Ann. § 76–5–404.1(1), and *Reyes–Castro* dictates that plaintiff's allegations state a cause of action under 42 U.S.C. § 13891. The district court's dismissal of plaintiffs' complaint for failure to state a claim is **REVERSED**, as is the district court's decision to decline pendent jurisdiction over plaintiffs' state law claims, and the matter is remanded to the district court for further proceedings consistent with this opinion.